# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-503V
Filed: July 29, 2025

|  |  |
|---|---|
| MAYRA DEL BOSQUE *as parent and natural guardian of M.R., a minor*,<br><br>                 Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>                 Respondent. | Special Master Horner |

*David John Carney*, Green & Schafle LLC, Philadelphia, PA, for petitioner.
*Benjamin Patrick Warder*, U.S. Department of Justice, Washington, DC, for respondent.

## RULING ON ENTITLEMENT[1]

On April 27, 2020, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa, *et seq.* (2012) ("Vaccine Act"),[2] alleging that M.R. suffered immune thrombocytopenic purpura ("ITP") caused-in-fact by vaccination(s) he received on November 7, 2017, including measles, mumps, and rubella ("MMR") vaccine.  (ECF No. 1.)  For the reasons set forth below, I conclude that petitioner is entitled to compensation for M.R.'s injury.

### I.  Applicable Statutory Scheme

Under the National Vaccine Injury Compensation Program, compensation awards are made to individuals who have suffered injuries after receiving vaccines.  In

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services).  **This means the document will be available to anyone with access to the internet.**  In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Within this decision, all citations to § 300aa will be the relevant sections of the Vaccine Act at 42 U.S.C. § 300aa-10, *et seq.*

1

general, to gain an award, a petitioner must make a number of factual demonstrations, including showing that an individual received a vaccination covered by the statute; received it in the United States; suffered a serious, long-standing injury; and has received no previous award or settlement on account of the injury. Finally – and the key question in most cases under the Program – the petitioner must also establish a *causal link* between the vaccination and the injury. In some cases, the petitioner may simply demonstrate the occurrence of what has been called a "Table Injury." That is, it may be shown that the vaccine recipient suffered an injury of the type enumerated in the "Vaccine Injury Table," corresponding to the vaccination in question, within an applicable time period following the vaccination also specified in the Table. If so, the Table Injury is presumed to have been caused by the vaccination, and the petitioner is automatically entitled to compensation, unless it is affirmatively shown that the injury was caused by some factor other than the vaccination. § 300aa-13(a)(1)(A); § 300aa-11(c)(1)(C)(i); § 300aa-14(a); § 300aa-13(a)(1)(B). The Vaccine Injury Table includes ITP as an injury associated with the MMR vaccine, but only if onset occurs between 7-30 days post-vaccination. 42 C.F.R. § 100.3(a)(V)(A).

Alternatively, if no injury falling within the Table can be shown, a petitioner could still demonstrate entitlement to an award by instead showing that the vaccine recipient's injury or death was caused-in-fact by the vaccination in question. § 300aa-13(a)(1)(A); § 300aa-11(c)(1)(C)(ii). In particular, a petitioner must demonstrate that the vaccine was "not only [the] but-for cause of the injury but also a substantial factor in bringing about the injury." *Moberly v. Sec'y of Health & Human Servs.*, 592 F.3d 1315, 1321-22 (Fed. Cir. 2010) (quoting *Shyface v. Sec'y of Health & Human Servs.*, 165 F.3d 1344, 1352-53 (Fed. Cir. 1999)); *Pafford v. Sec'y of Health & Human Servs.*, 451 F.3d 1352, 1355 (Fed. Cir. 2006). To successfully demonstrate causation-in-fact, petitioner bears a burden to show: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of proximate temporal relationship between vaccination and injury. *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005).

For both Table and Non-Table claims, Vaccine Program petitioners bear a "preponderance of the evidence" burden of proof. § 300aa-13(1)(a). That is, a petitioner must offer evidence that leads the "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the judge of the fact's existence." *Moberly*, 592 F.3d at 1322 n.2 (alternation in original); *see also Snowbank Enters., Inc. v. United States*, 6 Cl. Ct. 476, 486 (1984) (explaining that mere conjecture or speculation is insufficient under a preponderance standard). Proof of medical certainty is not required. *Bunting v. Sec'y of Health & Human Servs.*, 931 F.2d 867, 873 (Fed. Cir. 1991). However, a petitioner may not receive a Vaccine Program award based solely on her assertions; rather, the petition must be supported by either medical records or by the opinion of a competent physician. § 300aa-13(a)(1).

Cases in the Vaccine Program are assigned to special masters who are responsible for "conducting all proceedings, including taking such evidence as may be appropriate, making the requisite findings of fact and conclusions of law, preparing a decision, and determining the amount of compensation, if any, to be awarded." Vaccine Rule 3(b)(1). Special masters must ensure each party has had a "full and fair opportunity" to develop the record. Vaccine Rule 3(b)(2). However, special masters are empowered to determine the format for taking evidence based on the circumstances of each case. Vaccine Rule 8(a); Vaccine Rule 8(d). Special masters are not bound by common law or statutory rules of evidence but must consider all relevant and reliable evidence in keeping with fundamental fairness to both parties. Vaccine Rule 8(b)(1). The special master is required to consider "all [] relevant medical and scientific evidence contained in the record," including "any diagnosis, conclusion, medical judgment, or autopsy or coroner's report which is contained in the record regarding the nature, causation, and aggravation of the petitioner's illness, disability, injury, condition, or death," as well as the "results of any diagnostic or evaluative test which are contained in the record and the summaries and conclusions." § 300aa-13(b)(1)(A). The special master is required to consider all the relevant evidence of record, draw plausible inferences, and articulate a rational basis for the decision. *Winkler v. Sec'y of Health & Human Servs.*, 88 F.4th 958, 963 (Fed. Cir. 2023) (citing *Hines ex rel. Sevier v. Sec'y of Health & Human Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1991)).

## II.     Factual and Procedural History

On October 12, 2023, I issued Findings of Fact and Conclusions of Law in this case. (ECF No. 47; 2023 WL 7299812 (Fed. Cl. Spec. Mstr. Oct. 12, 2023).) The factual history of M.R.'s injury, as well as a summary of the expert opinions and the procedural history of this case leading up to that point, are included in the finding of fact and will not be repeated. There is no dispute that M.R. suffered ITP; however, the parties disagree as to the timing of onset. After considering the record as a whole, I concluded that "abnormal bruising was the first symptom of M.R.'s ITP and that onset of the condition occurred no earlier than 31 days post-vaccination but within 42 days post-vaccination." (ECF No. 47, p. 16; 2023 WL 7299812, at *12.)

Thereafter, petitioner filed updated medical records marked as Exhibits P19-P23 and the parties filed briefs regarding petitioner's entitlement to compensation. Specifically, petitioner filed a motion for a ruling on the record on August 12, 2024, respondent filed his response on October 31, 2024, and petitioner filed a reply on December 2, 2024. (ECF Nos. 62, 64-65.)

I have determined that the parties have had a full and fair opportunity to present their cases and that it is appropriate to resolve entitlement on the existing record. *See* Vaccine Rule 8(d); Vaccine Rule 3(b)(2); *see also Kreizenbeck v. Sec'y of Health & Human Servs.*, 945 F.3d 1362, 1366 (Fed. Cir. 2020) (noting that "special masters must determine that the record is comprehensive and fully developed before ruling on the record").

### III. Party Contentions

Given the finding that onset of M.R.'s ITP occurred between 31-42 days post-vaccination, respondent notes that, of course, M.R.'s injury does not qualify for any causal presumption under the Vaccine Injury Table. (ECF No. 64, n. 3.) Thus, this case turns on the three-part *Althen* analysis for causation-in-fact. (*Id.* at 17.) However, respondent acknowledged that his expert, Dr. Strouse, agreed that the MMR vaccine can cause ITP and further acknowledged that Dr. Strouse agreed that the elevated risk of post-MMR vaccine ITP persists for up to 42 days. (*Id.* at 21-23.) Therefore, respondent conceded that, so long as the prior finding of fact controls, petitioner has satisfied the first and third *Althen* prongs. (*Id.*) Regarding the second *Althen* prong, which remains as the only disputed element of petitioner's prima facie case, respondent argues that there is no logical sequence of cause-and-effect implicating M.R.'s MMR vaccine as a cause of his ITP, even after accounting for petitioner's demonstration of a theory of causation and appropriate timing. (*Id.* at 24.) Respondent contends that petitioner has treated *Althen* prong two as "an 'afterthought.'" (*Id.* at 29 (citing *Randolph v. Sec'y of Health & Human Servs.*, No. 15-146V, 2021 WL 5816271, at *22 (Fed. Cl. Spec. Mstr. Nov. 12, 2021)).)

First, respondent argues that M.R.'s ITP "was not typical for vaccine-caused ITP." (ECF No. 64, p. 25.) Specifically, respondent contends that M.R. experienced an insidious and gradual decrease in platelet levels, whereas post-vaccination ITP generally includes a sudden decrease in platelet counts as autoantibodies bind to platelets and are then rapidly cleared by the spleen or liver. (*Id* (citing Ex. C, p. 2; Bernward Zeller et al., *Childhood Idiopathic Thrombocytopenic Purpura in the Nordic Countries: Epidemiology and Predictors of Chronic Disease*, 94 ACTA PÆDIATRICA 178 (2005) (Ex. A, Tab 12, pp. 1-6).) Respondent cites a study by Rajantie et al., in which no cases of insidious onset of ITP (defined as the presence of symptoms for more than two weeks prior to diagnosis) followed MMR vaccine. (*Id.* at 25-26 (discussing J. Rajantie et al., *Vaccination Associated Thrombocytopenic Purpura in Children*, 25 VACCINE 1383 (2007) (Ex. P11(j))).)

Second, the persistence of M.R.'s ITP is not consistent with the typical clinical course of vaccine-caused ITP. Whereas M.R. suffered ITP chronically, vaccine-caused ITP is usually self-limiting and resolves within weeks to months. (*Id.* at 26-27 (citing Eric K. France et al., *Risk of Immune Thrombocytopenic Purpura After Measles-Mumps-Rubella Immunization in Children*, 121 PEDIATRICS e687 (2008) (Ex. P11(m)); Corri Black et al., *MMR Vaccine and Idiopathic Thrombocytopenic Purpura*, 55 BRIT. J. CLINICAL PHARMACOLOGY 107 (2003) (Ex. P11(n)); Valerio Cecinati et al., *Vaccine Administration and the Development of Immune Thrombocytopenic Purpura in Children*, 9 HUM. VACCINES & IMMUNOTHERAPEUTICS 1158 (2013) (Ex. P12(b))).)

Third, respondent's expert presents M.R.'s prior pharyngitis, documented at M.R.'s December 8, 2017 pediatric visit, as a more likely cause of his ITP. (*Id.* at 27 (citing Ex. P1, p. 31).) In particular, whereas M.R.'s presentation was atypical in initially demonstrating only mild thrombocytopenia and neutropenia (*Id.* at 28 (citing Ex. P1, p.

4

32; Ex. P6, pp. 213-14), Dr. Strouse explained that "short-term decreases in neutrophils and platelets can be seen with viral suppression for up to several weeks." (*Id.*) Pharyngitis in toddlers is commonly caused by viral infection and even petitioner's expert agreed that ITP can be caused by viral infection. (*Id.*)  Respondent does not address whether there is sufficient evidence for respondent to affirmatively prove that M.R.'s pharyngitis constitutes a factor unrelated to vaccination under his own shifted burden of proof.  Instead, he argues that he is permitted to present evidence of an independent, non-vaccine cause for M.R.'s ITP to contradict or weaken petitioner's prima facie showing. (ECF No. 64, pp. 27-28 (citing *Stone v. Sec'y of Health & Human Servs.*, 676 F.3d 1373, 1379 (Fed. Cir. 2012)).)

Petitioner argues, however, that M.R.'s clinical course, as described in his medical records, does support a logical sequence of cause-and-effect implicating M.R.'s vaccination as a but for cause of his condition. (ECF No. 65, p. 5.)  Specifically, M.R. demonstrated an onset of symptoms of ITP within an appropriate timeframe from which to infer causation and his ITP was diagnosed and confirmed by laboratory results at the time of diagnosis that showed a white blood cell count of 3.62 and platelets of 51,000. (*Id.* at 6 (citing Ex. P1, p. 32).)  Petitioner maintains that the logical sequence of cause and effect is further supported by her expert's causal opinion, which set forth a theory of causation and also noted that no other triggering event was documented as a precipitating event for M.R.'s ITP. (*Id.* at 8.)

Petitioner argues that respondent's contention that vaccine-caused ITP must resolve within weeks to months would mean that no petitioner would ever be compensated for this injury in the Vaccine Program given the six-month statutory severity requirement.[3] (*Id.* at 11.)  Moreover, petitioner stresses that respondent acknowledges that 10% of ITP patients will have chronic disease. (*Id.* (citing ECF No. 64, p. 27).)  Petitioner argues that respondent cannot reasonably contend that there is a meaningful difference between a gradual and sudden drop in platelets when his expert has opined that onset of ITP can occur up to 42 days post-vaccination. (*Id.*)

Petitioner stresses that M.R.'s purported viral antecedent is only "vaguely described" and that no treating physician attributed M.R.'s ITP to any viral illness or to pharyngitis. (ECF No. 65, pp. 8-9.)  Petitioner further argues that, even if M.R.'s vaccination and pharyngitis both represented potential causes of his ITP, petitioner would not bear a burden of eliminating the other cause. (*Id.* at 9 (citing *Walther v. Sec'y of Health & Human Servs.*, 485 F.3d 1146, 1149 (Fed. Cir. 2007)).)  Petitioner argues that respondent cannot meet his own shifted burden of proof to demonstrate the pharyngitis as the sole cause of the ITP. (*Id.* at 13-14.)

---

[3] This argument does not actually present the full picture in that petitioners suffering ITP may alternatively demonstrate that they experienced inpatient hospitalization and surgical intervention. *Leming v. Sec'y of Health & Human Servs.*, 98 F.4th 1107 (Fed. Cir. 2024).  Prior petitioners have, in fact, struggled to demonstrate greater than six months of sequela related to ITP. *E.g.*, *Crabbe v. Sec'y of Health & Human Servs.*, No. 10-762V, 2011 WL 4436724 (Fed. Cl. Spec. Mstr. Aug. 26, 2011).

### IV. Analysis

The second *Althen* prong requires preponderant proof of a logical sequence of cause and effect, which is usually supported by facts derived from petitioner's medical records.[4]  *Althen*, 418 F.3d 1278; *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1375-77 (Fed. Cir. 2009); *Capizzano v. Sec'y of Health & Human Servs.*, 440 F.3d 1317, 1326 (Fed. Cir. 2006); *Grant v. Sec'y of Health & Human Servs.*, 956 F.2d 1144, 1148 (Fed. Cir. 1992).  In this case, the contemporaneous medical records establish the fact of M.R.'s ITP and I have determined that the onset of the symptoms of his ITP occurred within a time period from which a causal inference can be drawn.  However, the medical records lack an explicit medical opinion addressing the underlying cause of M.R.'s ITP.  In that regard, while the opinions of treating physicians are often favored, *Capizzano*, 440 F. 3d at 1326, a petitioner may support a cause-in-fact claim through presentation of either medical records or an expert medical opinion.  *See* § 300aa-13(a).  Absent any explicit opinion in the medical records favoring either party's preferred explanation for M.R.'s ITP, analysis of *Althen* prong two becomes a weighing of the competing expert opinions.

Even where, as here, *Althen* prongs one and three have been satisfied, the Federal Circuit has cautioned that *Althen* prong two "is not without meaning." *Capizzano*, 440 F.3d at 1327.  Indeed, the *Althen* court held that "neither a mere showing of a proximate temporal relationship between vaccination and injury, nor a simplistic elimination of other potential causes of the injury suffices, without more, to meet the burden of showing actual causation."  418 F.3d at 1278.  Ultimately, a petitioner bears an affirmative burden of proof to establish that the vaccine did cause the injury at issue.  *Pafford*, 451 F.3d at 1357-58.  However, the Federal Circuit has also explained that satisfaction of *Althen* prongs one and three is probative regarding the presence of a logical sequence of cause and effect.  *Capizzano*, 440 F.3d at 1326.  The Court described the circumstances in which *Althen* prong two may be a stumbling block as follows:

> There may well be a circumstance where it is found that a vaccine *can* cause the injury at issue and where the injury was temporally proximate to the vaccination, but it is illogical to conclude that the injury was actually caused by the vaccine.  A claimant could satisfy the first and third prongs without satisfying the second prong when medical records and medical opinions do not suggest that the vaccine caused the injury, or where the

---

[4] Medical records are generally viewed as trustworthy evidence. *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cie. 1993).  These records are generally contemporaneous to the medical events and "contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions.  With proper treatment hanging in the balance, accuracy has an extra premium."  *Id.*  However, medical records and/or statements of a treating physician's views do not *per se* bind the special master. § 300aa-13(b)(1) (providing that "[a]ny such diagnosis, conclusion, judgment, test result, report, or summary shall not be binding on the special master or court"); *Snyder v. Sec'y of Health & Human Servs.*, 88 Fed. Cl. 706, 745 n.67 (2009) (reasoning that "nothing . . . mandates that the testimony of a treating physician is sacrosanct—that is must be accepted in its entirety and cannot be rebutted").

probability of coincidence or another cause prevents the claimant from proving that the vaccine caused the injury by preponderant evidence.

*Id.* at 1327.

Here, as in *Capizzano*, it is established that M.R.'s MMR vaccine *can* cause ITP and that the injury was temporally proximate to the vaccine. And, further to that, petitioner has come forward with an affirmative medical opinion by a qualified specialist, Dr. Ghose, who opines, based on a review of M.R.'s own clinical history and the relevant medical literature, that M.R.'s MMR vaccine did cause his ITP. (Ex. 9, pp. 7-8.) However, respondent seeks to raise two considerations, like those referenced in *Capizzano*, as confounding. First, respondent raises several arguments regarding the clinical presentation of M.R.'s own ITP that he contends disfavor the vaccine as a cause of the condition. Second, he argues that he has presented evidence indicating that another cause, namely a viral infection evidenced by pharyngitis, prevents a finding that M.R.'s ITP was caused by his vaccination.

Respondent argues that the nature of the onset of M.R.'s ITP, which he contends included a gradual decrease in platelet counts, is not typical of vaccine causation. Respondent's argument includes two distinct points. Respondent contends (1) that vaccine-related ITP includes an abrupt or rapid decrease in platelets and (2) that a study by Rajantie et al. shows that no instance of post-MMR ITP had an insidious onset of symptoms, by which they meant symptoms arising more than two weeks prior to diagnosis. (Rajantie et al., *supra*, at Ex. P11(j), p. 2.) However, these points are not persuasive in light of the facts as I have found them. In the finding of fact, I explained that M.R.'s platelet count was diagnostic of ITP the first time it was measured on January 2, 2018, and fluctuated thereafter. (ECF No. 47, p. 15; 2023 WL 7299812, at *11 (explaining that "January 2, 2018, is merely the first time M.R.'s platelets happened to be measured during the relevant period . . . . [and] the date of the test result does not in itself imply the date of the drop in platelet counts").) Therefore, respondent's argument that platelets declined gradually prior to January 2, 2018, is speculative.[5]

---

[5] In the finding of fact, I further explained that:

> Dr. Strouse stresses the difference between M.R.'s January 2 platelet count and his mid-January platelet count to seemingly implicate a sudden platelet drop occurring around that specific time that distinguishes M.R.'s later more severe thrombocytopenia from his earlier mild presentation. (Ex. A, p. 3; Ex. C, p. 1.) However, the significance of select platelet counts is not at all clear given the documented fluctuations in M.R.'s platelet counts over time. After M.R.'s platelet count was initially measured at 51,000, it was rechecked two days later and was higher at 97,000. (Ex. P6, pp. 450, 472.) Only after that did it drop to 4,000 by January 14, 2018. (Ex. P3, p. 5.) Thereafter, as discussed extensively in the factual summary above, M.R.'s platelet counts fluctuated throughout his entire treatment history. Dr. Strouse has filed literature explaining that "[a]lmost all patients have fluctuations in their platelet count" and that "[r]ecognition that the platelet count is less important than overall bleeding symptoms" has improved care. Nichola Cooper, *State of the Art - How I Manage Immune Thrombocytopenia*, 177 BRIT. J. HAEMATOLOGY 39, 39, 48 (2017) (Ex. A, Tab 5, pp. 1, 10).

Moreover, Dr. Strouse's opinion that platelets drop "suddenly" in post-vaccination ITP is based on citation to a study by Zeller et al., which did not actually measure how quickly platelets dropped prior to diagnosis. (Ex. C, p. 2 (citing Zeller et al., *supra*, at Ex. A, Tab 12).) Dr. Strouse has not explained what would constitute a "sudden" drop in platelets or how such a requirement would square with his opinion that there is an elevated risk of post-vaccination ITP for up to six weeks post-vaccination.

And, while respondent's argument as to insidious onset may have had some bearing on petitioner's argument that symptom onset of ITP had been much earlier than I ultimately found, the finding of fact concluded that onset of ITP in this case occurred in mid-December, heralded by a distinct onset of wider spread bruising, and diagnosis occurred at the beginning of January. This is very close to the two-week demarcation identified by Rajantie et al. and Zeller et al. In that regard, it is important to note the following limitations of the Rajantie study: the authors do not explain why two weeks to diagnosis is an important cut off; they do not explain how the timing of the first symptoms was ascertained among the subjects; and, of the 506 total children in the study, only 35 of the subjects were post-vaccination subjects. But, in any event, even if I did agree that onset of M.R.'s ITP was insidious, respondent has otherwise pointed to literature – Zeller et al. – that indicates that sudden onset is also more common among cases of ITP following infection, which is what respondent's expert opines was the cause of M.R.'s ITP. (Ex. C, pp. 2-3; Zeller et al., *supra*, at Ex. A, Tab 12, p. 4 tbl. II.) Thus, even if onset of M.R.'s ITP was insidious, this issue would not necessarily favor one party's proffered explanation over another.

Additionally, and relatedly, respondent stresses that Dr. Strouse explained that short-term decreases in neutrophils and platelets can be seen with viral suppression for up to several weeks. (Ex. A, p. 3.) Specifically, Dr. Strouse indicates that "M.R.'s initial presentation with mild thrombocytopenia and neutropenia is typically seen with decreased production." (*Id.*) Decreased production is one of three mechanisms of thrombocytopenia, with the others being increased consumption/destruction and sequestration. (*Id.*) However, in M.R.'s case, Dr. Strouse indicated that he "then developed increased bleeding and bruising and severe thrombocytopenia without other cytopenias." (*Id.*) Apart from the "short term" decreases in platelet and neutrophil counts, Dr. Strouse otherwise suggests that ITP related to either vaccination or infection is generally related to increased consumption/destruction of platelets. (*Id.*) Both Dr. Strouse's report and the literature he cites suggest that decreased platelet production and increased consumption/destruction of platelets are distinct "classes" of ITP. (Ex. A, p. 3; Jenny M. Despotovic, *Causes of Thrombocytopenia in Children*, UPTODATE (2021) (Ex. A, Tab. 1, pp. 1-2).) Given that Dr. Strouse has identified a more severe course of chronic ITP in M.R.'s case that could not be explained by a "short term" or "several

---

(ECF No. 47, p. 15; 2023 WL 7299812, at *12.) In the instant motion response, respondent acknowledged this aspect of the fact finding, but urged that "a fluctuation in the platelet level is not the same thing as a gradual decrease in platelet level with which M.R. initially presented. Respondent reiterates that a gradual decrease in platelet level is not typical of vaccine-caused ITP." (ECF No. 64, n. 10.) However, the point remains that nothing on this record indicates how quickly M.R.'s platelets dropped from normal to diagnostic of ITP. All we know is that the first time he was tested, a little over two weeks after onset of symptoms, he already had a diagnostically significant reduction in platelets.

weeks" long viral suppression of platelets, he has not adequately explained why it is reasonable to invoke multiple different *classes* of ITP to explain M.R.'s overall clinical history when he otherwise suggests that infection – like vaccination – would typically result in the class of ITP resulting from platelet consumption/destruction. Moreover, Dr. Strouse's invocation of viral suppression was premised on his understanding that the onset of M.R.'s ITP occurred in January of 2018, rather than December of 2017. However, for reasons explained in the finding of fact, I rejected that contention. (ECF No. 47, pp. 12-16; 2023 WL 7299812, at *9-12.)

Respondent further suggests that M.R.'s ITP is atypical of vaccine caused ITP because it was long-lasting. Thus, for example, in *Wright v. Secretary of Health & Human Services*, the Federal Circuit noted that "the Secretary recognized when adding [ITP] to the Table, thrombocytopenic purpura is rarely chronic, i.e., lasting more than 6 months, and chronic cases are thought to be the result of an autoimmune disorder rather than viral vaccination or viral infection." 22 F.4th 999, 1003 (Fed. Cir. 2022) (citing National Vaccine Injury Compensation Program: Revisions and Additions to the Vaccine Injury Table—II, 60 Fed. Reg. 56,289, 56,295 (Nov. 8, 1995)). Here, however, respondent's own expert, Dr. Strouse, though noting M.R. to have had a chronic presentation, explicitly opined that M.R.'s ITP was likely related to a prior viral infection, which, as noted above, represents the same class of ITP as vaccine-caused ITP. (Ex. C, pp. 2-3). Dr. Strouse stated that "[c]hronic ITP is uncommon after MMR vaccination as most children (93%) have resolution of thrombocytopenia within 6 months based on a meta-analysis of ITP associated with MMR vaccination." (Ex. A, p. 3 (citing Elpis Mantadakis et al., *Thrombocytopenic Purpura After Measles-Mumps-Rubella Vaccination: A Systematic Review of the Literature and Guidance for Management*, 156 J. PEDIATRICS 623 (2010) (Ex. A, Tab 6)).) On its face, this is not a statement that disclaims the potential for vaccine-related ITP to become chronic. Yet, looking closer at Mantadakis et al., as cited by Dr. Strouse, the authors note that while only 7% of post-MMR cases became chronic and, hence, overall "MMR-associated ITP is less likely to become chronic compared with the more common non-vaccine-associated disease," "the percentage of children who have development of chronic non-vaccine-associated ITP appears similar to that of MMR-related cases in children aged 12 to 18 months of age alone." (Mantadakis et al., *supra*, at Ex. A, Tab 6, pp. 4-5.) M.R. received the MMR vaccination at issue at his 12-month well visit. (Ex. P1, pp. 26-27.) Thus, the chronicity of M.R.'s ITP does not distinguish his case from vaccine-related ITP.

Finally, respondent argues that M.R.'s pharyngitis, diagnosed on December 8, 2017, is a more likely cause of his ITP. On this point, the parties cite different Federal Circuit precedents. Petitioner focuses on *Walther*, in which, citing the Restatement (Second) of Torts, the Federal Circuit explained that "in cases involving multiple independent potential causes, if it is clear 'that harm has been caused to the plaintiff by only of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm.'" *Walther*, 485 F.3d at 1151 (quoting RESTATEMENT (SECOND) OF TORTS § 433B(3) (AM. L. INST. 1965)). Thus, in this Program "the petitioner generally has the burden on causation, but when there are multiple independent potential causes, the government has the burden to prove that the

9

covered vaccine did not cause the harm." *Id.* Citing *Stone*, 676 F.3d at 1379, respondent argues that he is entitled to present M.R.'s pharyngitis as confounding petitioner's prima facie showing without assuming the burden of proof. However, while *Stone* explains as "commonsense" the proposition that no evidence is embargoed from a special master's analysis of petitioner's prima facie case, the *Stone* court explained that the special master nonetheless "may not require the petitioner to shoulder the burden of eliminating all possible alternative causes in order [to] establish a prima facie case" and that the special master may conclude an injury is due to a factor unrelated to vaccination "only if that finding is supported by a preponderance of the evidence." 676 F.3d at 1379-80.

Whereas Dr. Ghose opined on petitioner's behalf that no other immunologic trigger was documented, respondent argues via Dr. Strouse that M.R.'s pharyngitis of December 8, 2017, is a more likely cause of his ITP. (ECF No. 64, p. 29.) However, although Dr. Ghose does not dispute that M.R. was seen for a fever on December 8 and diagnosed with pharyngitis, he stresses that this is inadequate to confirm a viral infection in particular. (Ex. P13, p. 2.) A diagnosis of "pharyngitis" simply indicates M.R. had a sore throat. *Pharyngitis*, DORLAND'S MEDICAL DICTIONARY ONLINE, https://www.dorlandsonline.com/dorland/definition?id=38409 (last visited July 28, 2025). In that regard, Dr. Strouse merely relies on the syllogism that pharyngitis among young children is often explained by viral infections and that viral infection, in turn, is the cause of many cases of ITP. (Ex. C, p. 2.) Importantly, however, the Federal Circuit has "rejected statistical likelihood alone as proof of actual causation." *Boatmon v. Sec'y of Health & Human Servs.*, 941 F.3d 1351, 1363 (Fed. Cir. 2019) (citing *Knudsen v. Sec'y of Health & Human Servs.*, 35 F.3d 543, 550 (Fed. Cir. 1994)). As explained above, M.R. was not actually diagnosed with a viral illness, none of M.R.'s treating physicians attributed his ITP to his prior presentation with pharyngitis in particular or an infectious illness more generally, and Dr. Strouse was not persuasive in contending that the clinical characteristics of M.R.'s own ITP can distinguish an infectious cause. Thus, having considered the evidence raised by respondent with respect to pharyngitis as a potential cause of M.R.'s ITP (*accord Stone*), I cannot conclude that respondent's argument in favor of pharyngitis as the cause of M.R.'s ITP confounds petitioner's prima facie showing under the *Althen* test.

Once petitioner has satisfied her own burden pursuant to the *Althen* test, the burden shifts to respondent to demonstrate that the injury was caused by factors unrelated to vaccination. § 300aa-13(a)(1)(B); *Deribeaux v. Sec'y of Health & Human Servs.*, 717 F.3d 1363, 1367 (Fed. Cir. 2013). In this case, respondent has not argued that he can satisfy his own burden of proof with respect to the idea that M.R.'s ITP was caused by his pharyngitis. But in any event, the Federal Circuit has rejected the contention that the presence of a viral infection can *per se* be considered a factor unrelated to vaccination. *Knudsen*, 35 F.3d at 548-50. Rather, respondent bears a burden of proving not only that there was a viral infection, but also that the infection was principally responsible for causing petitioner's injury. *Id.* Thus, any argument by respondent that he had preponderantly established such an infection as the cause of M.R.'s ITP would fail for the same reasons discussed above. *Accord Knudsen*, 35 F.3d

10

at 550 (stating that "[t]his conflicting record evidence does not in our view either compel a finding of viral alternative causation nor preclude one. If the evidence is seen in equipoise, then the government has failed in its burden of persuasion and compensation must be awarded.").

## V.     Conclusion

After weighing the evidence of record within the context of this Program, I find by preponderant evidence that petitioner has demonstrated that M.R. suffered ITP caused-in-fact by the MMR vaccination he received on November 7, 2017. A separate damages order will be issued.

**IT IS SO ORDERED.**

**<u>s/Daniel T. Horner</u>**
Daniel T. Horner
Special Master
